THE STATE, EX REL. BUXTON, *v.* DALZELL ET AL.

[Cite as State, ex rel. Buxton, v. Dalzell (1969),
23 Ohio Misc. 102.]

(No. A-235784—Decided December 17, 1969.)

MANDAMUS: Common Pleas Court of Hamilton County.

Messrs. *Tyler, Kane & Rubin,* for relator.
Mr. *William A. McClain,* city solicitor, and Mr. *William H. Brewe,* for respondent city.
Messrs. *Beirne, Wirthlin & Manley,* for respondent Ahlert.

KEEFE, J. This is a mandamus action in which Edmund R. Buxton, Jr., is relator and respondents are the three members of the Civil Service Commission of the city of Cincinnati, William L. Ahlert, Commissioner of Buildings of the city of Cincinnati, City Manager Richard L. Krabach, and the city of Cincinnati. Relator is a city of Cincinnati employee and has been since April 1957. He is an engineer registered under the laws of the state of Ohio.

A similar case involving Mr. Buxton as relator and the three members of the Civil Service Commission as respondents was tried by this court in July 1969. Following the court's decision in that case, certain motions were made and hearings held which resulted in the vacation of this court's judgment of July 30, 1969. Included in *this* action as parties are Mr. Ahlert, Commission of Buildings of the city of Cincinnati, and City Manager Krabach, neither of whom was a party in the original trial. The city itself is also a new party.

Before the court at this time are motions for summary judgment filed on behalf of all the parties, each asking this court for a summary judgment for the reason that there is

no genuine issue as to any material fact and contending that each moving party is entitled to judgment as a matter of law under Section 2311.041, Revised Code, entitled "Summary Judgment." In support of the motions for summary judgment, affidavits of the following have been filed: Carl B. Rubin, a member of the Civil Service Commission of the city of Cincinnati from January 1, 1960, through March 31, 1966, and Chairman of the Commission from June 1965 through March 1966; City Manager Richard L. Krabach; Harold R. Latimer and Arthur F. Hull, Jr., members of the Civil Service Commission of Cincinnati; Donald F. Hunter, former Building Commissioner of the city of Cincinnati; and J. Dan Hallihan, Personnel Officer and Secretary of the Civil Service Commission of the city of Cincinnati.

All respondents, including the three members of the Civil Service Commission, urge upon this court, *inter alia,* that the Commissioner of Buildings of the city of Cincinnati, although never heretofore considered a department head, is, in fact, the head of the Building Department of the city of Cincinnati and as such he is in the unclassified service and may be appointed without examination. If this contention is correct, of course the relator Buxton must fail because it is the essence of his position that the Commissioner of Buildings is a classified office and must be filled by competitive examination. Many of the affidavits emphasize the importance of the office of the Commissioner of Buildings of Cincinnati. This court does not dispute the responsibilities and authority of that office. However, this is not ultimately determinative of whether the Commissioner of Buildings is a department head. Section 143.08, Revised Code, provides that the unclassified service of cities comprises, among others, "heads of principal departments." Who are the heads of principal departments in the city of Cincinnati and where does the authority lie to make that designation? Article II, Section 1 of the charter of the city of Cincinnati endows council with that power in the following language:

"All legislative powers of the City shall be vested,

subject to the terms of this Charter and of the Constitution of the State of Ohio, in the Council.''

City council in the Administrative Code (passed by council) has ordained that the Mayor, the City Manager, and the Directors of Departments established by the Administrative Code shall be the principal appointive officers as contemplated by Section 143.08, Revised Code (Article 1, Section 1 of the Administrative Code). Council has never made the Commissioner of Buildings director of a department. The Division of Buildings, traditionally administered by the Commissioner of Buildings, has been until recently within the Cincinnati *Department of Safety*. City council has currently expressed its continuing determination to retain building and heating inspection as a *Division* of Buildings, not a department. On December 3, 1969, city council removed the Division of Buildings from the Department of Safety to the Department of Public Works. This ordinance becomes effective January 2, 1970.

As indicated, one of those supplying affidavits in this case is the City Manager. In it he states under oath:

''As the head of a 'building department,' the position of Commissioner of Buildings is, in my opinion, in the unclassified service * * *.''

Council, not the city manager, determines which appointive officers in the city of Cincinnati serve as directors of departments and *ipso facto* in the unclassified service.

In the memorandum accompanying the motion for summary judgment filed by the City Manager, the City, and the Civil Service Commission, it is stated:

''Under Section 143.08(A)(3), heads of departments of municipalities are in the unclassified service and may be appointed without examination.

''What the city of Cincinnati designates as its 'building division' under the director of safety is, in contemplation of the statutes of the state of Ohio, a building department and the city is certified to enforce the Ohio building laws as having a qualified building department. Under Chapters 3781 and 3791 of the Revised Code, the 'building division' of the city of Cincinnati functions as a building

department in matters of state law. We note that Section 3781.03 speaks of city building departments with 'building commissioners' in charge of them * * *

"In the contemplation of state law, what the city of Cincinnati calls a building division is a building department. The head of it, the building commissioner, is the head of a department under state law. By calling it something other than a department, the city of Cincinnati cannot affect the legal status of the head of that department."

This court does not subscribe to that reasoning. I believe Ohio law concerning the power of Cincinnati's council to have the Cincinnati Commissioner of Buildings in charge of a division instead of a department fully justifies the different designation.

In reviewing applicable law, in the text of Ohio Jurisprudence 2d it is stated:

"D. Municipal Charters.

"80. Generally; Constitutional Authority. The Constitution provides that any municipality may frame and adopt or amend a charter for its government and may, subject to the provisions of Sec. 3 of Article 18 of the Constitution, exercise thereunder all powers of local self-government. Thus a municipality may adopt a charter which prescribes its form of government and defines its powers on purely local matters * * *." 38 Ohio Jurisprudence 2d, Municipal Corporations, Section 80.

The Ohio Supreme Court in *State, ex rel. Canada,* v. *Philips* (1958), 168 Ohio St. 191, incorporates reasoning and arrives at a conclusion which I believe strongly supports the result which I have reached here. *Canada* holds that provisions of a city charter with reference to local officials can be fully effective "notwithstanding that a state statute" provides otherwise. (Quoted words from syllabus two of *Canada.*)

At the time of the appointment of Mr. Ahlert as Commissioner of Buildings of the city of Cincinnati on August 22, 1968, and at the present time, the office of Commissioner of Buildings is in the classified service of the city of Cincinnati and all Civil Service laws and ordinances have application to the selection of the commissioner.

Counsel for Mr. Ahlert states the following in his memorandum accompanying the motion for summary judgment:

"* * * the defendant had the right to appoint William Ahlert to the position of Building Commissioner because the position is one that comes within the provisions of Section 143.23(B), in that it requires peculiar and exceptional qualifications of a managerial character. In addition, the provisions of Section 143.24 authorize the Commission to promote the defendant without a competitive examination because the circumstances existing at the time of the appointment on August 22, 1968, and the nature of the position were such that promotion on the basis of the results of a competitive examination were impracticable."

In seeking to justify the legality of the action of the Civil Service Commission on August 22, 1968, in appointing Mr. Ahlert to the position of Commissioner of Buildings, counsel for the respondents invoke the provisions of Sections 143.23(B) and 143.24, Revised Code. Pertinent parts of these two sections follow:

"143.23. Temporary and exceptional appointments.

"(B) In case of a vacancy in a position in the classified service where peculiar and exceptional qualifications of a scientific, managerial, professional, or educational character are required, and upon satisfactory evidence that for specified reasons competition in such special case is impracticable and that the position can best be filled by a selection of some designated person of high and recognized attainments in such qualities, the director may suspend the provisions of Sections 143.01 to 143.08, inclusive, of the Revised Code, requiring competition in such case, but no suspension shall be general in its application, and all such cases of suspension shall be reported in the annual report of the director with the reasons for the suspension."

"143.24. Promotions.

"Vacancies in positions in the classified service shall be filled in so far as practicable by promotions. The director of state personnel shall provide in his rules for keeping a record of efficiency for each employee in the classified service, and for making promotions in the classified service

on the basis of merit, to be ascertained as far as practicable by promotional examinations, by conduct and capacity in office, and by seniority in service, and shall provide that vacancies shall be filled by promotion in all cases where, in the judgment of the director, it is for the best interest of the service. *All examinations for promotions shall be competitive.* In promotional examinations, efficiency and seniority in service shall form a part of the maximum mark attainable in such examination. In all cases where vacancies are to be filled by promotion, the director shall certify to the appointing authority only the names of the three persons having the highest rating. The method of examination for promotions, the manner of giving notice thereof, and the rules governing the same shall be in general the same as those provided for original examinations, except as otherwise provided in Sections 143.01 to 143.48, inclusive, of the Revised Code.'' (Emphasis added.)

There are at least two reasons why the action taken by the Civil Service Commission on August 22, 1968, in reference to Mr. Ahlert, derives no validity from Section 143.23, Revised Code. This section did not apply to Mr. Ahlert's set of circumstances. The section obviously is intended to apply to the appointment of someone with peculiar and exceptional qualifications who is not already an employee in the division. There is significance in the title of Section 143.23, Revised Code, ''Temporary and exceptional appointments.'' Mr. Ahlert had been in the building division for almost thirty years.

The second reason is that nothing which is before me on these motions for summary judgment indicates any necessary official findings by the Civil Service Commission that ''peculiar and exceptional qualifications of a scientific, managerial, professional, or educational character'' were required to fill the vacancy in the position of Commissioner of Buildings thus justifying the suspension of civil service laws requiring competition. Section 143.23(B), Revised Code, requires that ''no suspension shall be general in its application, and all such cases of suspension (that is, of the

provisions requiring competition) shall be reported in the annual report of the director with the reasons for the suspension." (Parenthetical material added.)

Respondents' arguments under Section 143.23(B), Revised Code, must fail.

This brings the court to the question of whether the action of the Civil Service Commission on August 22, 1968, in naming Mr. Ahlert Commissioner of Buildings was authorized by Section 143.24, Revised Code, entitled "Promotions," set out in full above.

Minutes of the Civil Service Commission meeting of August 22, 1968, include the following:

"At the request of Mr. Henry J. Sandman, Director of Safety, the Commission approved the promotion, without examination, of Mr. William L. Ahlert, Deputy Commissioner of Buildings, to the position of Commissioner of Buildings. The only other eligible applicant, Mr. George Wehrung, Deputy Commissioner is 70 years of age and would not be a candidate."

In proceeding under Section 143.24, Revised Code, "Promotions," a municipal civil service commission cannot defeat the spirit of civil service laws and ordinances by an arbitrary or unreasonable circumscription of those permitted to take examinations for promotion. The commission is entitled to establish reasonable preliminary requirements and limitations concerning eligibility for an examination. However, these requirements cannot be arbitrary. They cannot violate the general spirit of civil service nor can they disregard the specific requirement for civil service promotion that "all examinations for promotions shall be competitive." (Section 143.24, Revised Code.)

The pleadings herein reveal that at the time the Civil Service Commission named Mr. Ahlert as Commissioner of Buildings, relator was an engineer registered under the laws of the state of Ohio. Relator and other persons similarly situated at such time were denied permission to participate in a competitive examination.

From the answer of Richard L. Krabach:

"Respondent further admits that permission to participate in the competitive examination was denied relator in this action and other persons similarly situated."

From the answer of the Civil Service Commission of the city of Cincinnati:

"Respondents admit that on August 22, 1968, respondents * * *, constituting the Civil Service Commission of the city of Cincinnati, approved the appointment without examination of respondent, William L. Ahlert, as commissioner of buildings of the city of Cincinnati. Respondents further admit that permission to participate in a competitive examinaton was denied relator and other persons similarly situated by such action."

The answer of the respondent city of Cincinnati makes a similar admission. Mr. Ahlert's answer makes no specific issue of the denial of permission to relator (Buxton) and others to participate in a competitive examination.

The Civil Service Commission's action in determining that there were no other eligible applicants in the division of buildings for promotion to the position of commissioner was arbitrary and unreasonable under the circumstances. When it became apparent to the Civil Service Commission that the other deputy commissioner would not be a candidate for the office of commissioner because he was seventy years of age (see Minutes of Meeting of August 22, 1968, *supra*), the commission then had an obligation in order to fulfill the statutory requirements of a true competitive examination to move to the next category of qualified employees and allow them to compete in the civil service examinations with Mr. Ahlert. Whoever was to be approved and appointed Commissioner of Buildings should have had his qualifications tested by a written competitive promotional examination as required by law. (Sections 143.16 and 143.24, Revised Code.)

The prevailing spirit in civil service is that appointments in the classified service must be made on the basis of fitness, demonstrated as far as practicable by competitive examinations and which shall, at least in part, be written.

With respect to respondents' reliance on Section 143.24, Revised Code, "Promotions," and considering only what this court is authorized to scrutinize at a hearing on motions for summary judgment (including the pleadings of relator and all respondents), reasonable minds can come to but one conclusion and that conclusion is adverse to the respondents.

Relator's motion for summary judgment is granted. Respondents' motions must be overruled. The appointment of William L. Ahlert as Building Commissioner of the city of Cincinnati on August 22, 1968, is vacated. The writ of mandamus prayed for in relator's petition must issue compelling the respondent commission to fill the position of Commissioner of Buildings as required by law. Since it is clear to me that Section 143.23(B), Revised Code, "Temporary and exceptional appointments" does not apply to Mr. Ahlert's fact situation, the action which the respondent commission must take is that mandated by Section 143.24, Revised Code, which requires an examination.

Mr. Ahlert continues as *acting* Commissioner of Buildings until his successor is duly qualified and appointed as provided for by law. Salary payments already made to him in performing the duties of Commissioner of Buildings or payments coming due to him between now and the time of the certification and appointment of his successor are not affected.

I prefer not to establish a deadline for that action by the respondent Civil Service Commission which must be undertaken. Since the attempted official appointment of Mr. Ahlert transpired on August 22, 1968, from every consideration the commission should now proceed to act with quickness.

*Judgment accordingly.*